UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

MALIK RAMSEY,

                     Petitioner,

    -against-

HAROLD D. GRAHAM, Superintendent,
Auburn Correctional Facility,

                 Respondent.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 09-CV-1799 (FB)

ORIGINAL

FILED
U.S. DISTRICT COURT E.D.N.Y.
★★ OCT 7 - 2009 ★★
BROOKLYN OFFICE

*Appearances:*
*For Petitioner:*
EDWIN SCHULMAN, ESQ.
123-60 83rd Avenue
Suite 2K
Kew Gardens, New York 11415

*For Respondent:*
RICHARD A. BROWN, ESQ.
Queens County District Attorney
BY:    WILLIAM H. BRANIGAN, ESQ.
         Assistant District Attorney
125-01 Queens Boulevard
Kew Gardens, New York 11415

*On the Brief:*
JOHN M. CASTELLANO, ESQ.
SHARON Y. BRODT, ESQ.

**BLOCK, Senior District Judge:**

       After participating in a burglary on September 28, 2003, Petitioner Malik

Ramsey ("Ramsey") was convicted by a Queens County jury of numerous crimes. Ramsey

now seeks a writ of habeas corpus pursuant to 28 U.S.C. Section 2254, bringing two claims:

(1) the prosecutor's summation was prejudicial, violating Ramsey's due process rights; and

(2) the length of his sentence unjustly penalized him for proceeding to trial after he rejected

two plea offers that would have imposed lesser sentences. For the reasons set forth below,

Ramsey's petition is denied.

# I.

Ramsey and two other men, each of whom was armed and masked, forcibly entered an apartment in Far Rockaway on September 28, 2003. Once inside, Ramsey and his associates bound the apartment's occupants with duct tape, stabbed two with a knife, and ransacked the dwelling. Trial Tr. at 687-708. Officers of the New York Police Department soon arrived. *Id.* at 748-49. Ramsey and his colleagues fled; Ramsey fired his weapon in an effort to cover his escape. *Id.* at 752-54. He then barricaded himself in another apartment in an effort to avoid capture. The police quickly breached the door and placed him under arrest. *Id.* at 758.

The evidence of guilt presented at trial was compelling; Ramsey does not challenge any of that evidence in this petition. One of the victims testified that he was bound with duct tape and stabbed; he could not, however, identify Ramsey. *See* Trial Tr. at 683-746. Police Officers Courtney Cummings ("Cummings") and Michael Gildea ("Gildea") were the first responders to the scene. Both testified in sum and substance that they observed Ramsey firing a gun in the building lobby, and that they pursued him to the apartment in which he barricaded himself; they then observed as other officers forcibly entered and took Ramsey into custody. Trial Tr. at 747-90 (testimony of Cummings); Trial Tr. at 803-15, 821-41 (testimony of Gildea). Both Cummings and Gildea identified Ramsey at trial as one of the perpetrators. The prosecution also introduced several items of physical evidence, including items recovered from Ramsey, or one of his associates, that had been taken from the victims. The prosecution also offered a handgun into evidence

that had been observed in Ramsey's possession at the scene, as well as ballistics evidence indicating that it had been fired on the evening in question.

In addition to this evidence, one of Ramsey's associates, Tashawn Long ("Long"), testified against Ramsey pursuant to a cooperation agreement; Long received a sentence of two years in prison in exchange for his cooperation. Trial Tr. at 1061-1133.

Portions of testimony Ramsey gave before the grand jury were read into the record for the limited purpose of establishing Ramsey's presence at the Far Rockaway building on the night of September 28, 2003. Ramsey admitted to the grand jury that he had been present, but contended that he was an innocent bystander who attempted to run from the shots being fired, and suffered an epileptic seizure in the process; according to him, he awoke in custody at the hospital. *See* Trial Tr. at 950-63.

Ramsey was charged with more than 40 individual crimes. The prosecution made two pre-trial plea offers. The first required Ramsey to plead guilty to an unspecified "violent B felony" in exchange for 10 years in prison. Against the advice of counsel, Ramsey rejected this offer. *See* Pre-Trial Hr'g Tr. at 4-5 (Feb. 3, 2005).[1] On the eve of trial, a second offer required Ramsey to plead guilty to one count of attempted murder in the first degree, in exchange for a sentence 15 years to life. Against the advice of counsel, Ramsey rejected this second offer, and proceeded to trial. *See* Trial Tr. at 3-4.[2] He was

---

[1] In connection with the first plea offer, Ramsey's trial counsel told the court: "In essence, [Ramsey]'s facing the rest of his life in jail. I explained that all to him. After explaining that to him, he does understand what I told him, and he has rejected the offer of ten years . . ." Pre-Trial Hr'g Tr. at 4 (Feb. 3, 2005).

[2] In connection with the second plea offer, Ramsey's trial counsel told the court: "I explained to [Ramsey] that on each attempted murder he's facing 15 to life and possible

3

convicted of burglary, robbery, and several other crimes; he was acquitted of more serious

charges, including counts of attempted murder.[3] He was sentenced to a mix of concurrent

and consecutive sentences of imprisonment that, taken together, will require him to spend

between 32 and 39 years in jail.

Ramsey appealed, raising the same two claims he brings now, namely, that

the prosecutor's summation was improper and that his sentence unjustly penalized him

for proceeding to trial. The Appellate Division affirmed the judgment of conviction and

the sentence. *See People v. Ramsey*, 852 N.Y.S.2d 304 (2d Dep't 2008). With respect to the

prosecutor's summation, the Appellate Division concluded:

> Although the prosecutor attempted to impermissibly shift the burden of
> proof during summation by asking the jury to weigh the People's proof
> against a portion of [Ramsey's] grand jury testimony that had been admitted,
> the court immediately sustained defense counsel's objection, and the curative
> instructions provided by the court alleviated any prejudice that may have
> resulted from the prosecutor's improper remark.
>
> Moreover, while we agree that several other comments made by the
> prosecutor were improper, the errors were harmless.

*Ramsey*, 852 N.Y.S. 2d at 305 (internal citations omitted). With respect to Ramsey's

sentence, the Appellate Division concluded that Ramsey's claim that he was "penalized"

was "without merit," continuing:

---

consecutive time. And also on the push-in burglary alleged robbery also facing consecutive
time . . . After explaining all of this to him and advising him to enter the plea, he's informed
me he's not interested." Trial Tr. at 4 (May 19, 2005).

[3] Ramsey's nine counts of conviction were: (1) burglary in the first degree; (2) two counts
of robbery in the second degree; (3) criminal possession of a weapon in the second degree;
(4) criminal possession of a weapon in the third degree; (5) two counts of reckless
endangerment in the first degree; (6) criminal mischief in the fourth degree; and (7)
resisting arrest.

The sentencing minutes indicate that the court relied upon the appropriate factors in sentencing the defendant to a higher sentence than that which was offered during plea negotiations. The fact that the defendant's sentence was greater than the one he would have received had he pleaded guilty does not establish his entitlement to a lesser sentence.

*Id.* at 305 (internal citations omitted). Ramsey's application for leave to appeal was denied by the Court of Appeals. *People v. Ramsey*, 10 N.Y.3d 843 (2008). Having exhausted his state remedies, he timely filed this habeas petition.

## II.

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes the standard for granting federal habeas relief on account of a constitutional violation to a state prisoner whose claims have been adjudicated on the merits by a state court. *See* 28 U.S.C. § 2254; *see also Williams v. Taylor*, 529 U.S. 362, 402-11 (2000); *Eze v. Senkowski*, 321 F.3d 110, 122 (2d Cir. 2003) (explaining that a court "need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment.") (internal citation omitted). Habeas relief may only be granted if the state court decision: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives" at a different result. *Williams*, 529 U.S. at 405-06. This requires a habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* at 409; *see also Clark v. Stinson*, 214 F.3d 315, 320-21 (2d Cir. 2000). A state court determination of fact "shall be presumed to be correct," and the habeas petitioner can rebut that presumption only with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With respect to Ramsey's petition, the "state court's ultimate decision" on both of his claims was the Appellate Division's affirmation of his conviction and sentence. *Ramsey*, 852 N.Y.S. 2d 304.

## B. The Prosecutor's Summation

A writ of habeas corpus will not issue on the basis of prosecutorial misconduct during summation unless such conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Convictions are "not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11(1985). In assessing alleged misconduct, courts consider "the severity of the misconduct, the measures adopted to cure it, and the certainty

of conviction in the absence of the misconduct." *United States v. Parkes*, 497 F.3d 220, 233-34

(2d Cir. 2007) (citing *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir.1995)).

With these settled principles in mind, the Court turns to the portions of the

prosecutor's summation to which Ramsey objects.

### 1.    *Ramsey's Grand Jury Testimony*

Ramsey argues that the prosecutor improperly shifted the burden of proof

to the defense when he stated with respect to Ramsey's grand jury testimony: "Ask

yourselves why the defendant lied in the grand jury . . ." Trial Tr. at 1390. "[Y]ou have .

. . all of that evidence weighing up against the defendant's grand jury testimony about

having an epileptic seizure." *Id.* at 1405. Defense counsel's objection was sustained, and

the trial court gave an appropriate curative instruction: "The jury is not to consider the

grand jury testimony . . . for any purpose in this matter other than to establish . . . that Mr.

Ramsey was present at the location of the building on the night in question." *Id.* at 1406.

The Appellate Division ruled that the prosecutor's comment was

"impermissibl[e]" since it attempted to shift the burden of proof on to the defense, but that

the curative instructions "alleviated any prejudice." *Ramsey*, 852 N.Y.S.2d at 305.

In the first instance, it is not clear that the prosecutor's comment was

impermissible: the record indicates that Ramsey himself was "insistent" that the portion

of his grand jury testimony relating to his epilepsy be read into the record. *See* Trial Tr. at

922-23.[4] As the portion of Ramsey's testimony relating to his epilepsy was properly

---

[4] The trial court, *sua sponte*, offered to strike all of Ramsey's grand jury testimony
"concerning his medical condition," explaining that it was not relevant to the limited
purpose for which the testimony was introduced, and cautioning that "the People are not

introduced, it was arguably proper for the prosecutor to comment on the lack of evidence for Ramsey's theory. Even if the prosecutor's comment was improper, the trial court gave prompt curative instructions. Therefore, under AEDPA, it was not unreasonable for the Appellate Division to conclude that Ramsey's case was not prejudiced.

## 2. *The Prosecutor's Other Comments*

Most serious among the other comments to which Ramsey objects was the prosecutor's accusation that defense counsel had "play[ed] the race card." Trial Tr. at 1408. Defense counsel had previously questioned the police's in-court identifications of Ramsey, stating: "I'm a male white, 40 years old, he's a male black, who do you think [the police witnesses] are going to pick there when they say who the perpetrator of the crime is?" *Id.* at 1350. In response to the prosecutor's "race card" comment, defense counsel objected, and the trial court sustained, warning the prosecutor: "Let's not comment on anything having to do with . . . anyone else's race in this matter." *Id.* Despite this unambiguous warning, the prosecutor continued on the same path, paraphrasing defense counsel's comment, and then asking rhetorically: "[W]hat purpose did that serve, other than to inflame you[?]" *Id.* at 1408. Defense counsel's promptly renewed objection was sustained. The court later gave the jury a curative instruction: "[T]o the extent that any argument was made with reference to [race] . . . [it was] again, of course, wholly inappropriate and must be disregarded by you," and "must in no way influence your determination of the facts of this case or the credibility of any of the witnesses." *Id.* at 1428.

---

contending that those statements are true. They are in effect impeaching Mr. Ramsey's own statement to the Grand Jury." Trial Tr. at 922-23. Nonetheless, according to defense counsel, "My client is insistent that he wants it to stay in." *Id.* at 923.

Among the other comments that were better left unsaid were the prosecutor's statement at one point that Ramsey and his associates were looking for "drugs and money." *See* Trial Tr. at 1377. There was no evidentiary support whatsoever for the contention that anyone involved in the crime was seeking drugs. The prosecutor also improperly argued that the defense had asked the jury to "completely disregard the needs" of the victims of the crime. *Id.* at 1380-81. This inappropriate appeal to sympathy drew an objection which the trial court sustained; the court later instructed the jury:

> [A]ny argument of [c]ounsel which suggested that your determination of the facts be influenced by compassion or by sympathy for a victim of a crime was wholly inappropriate and should be disregarded by you. As I explained before, sympathy is to have no role to play in your deliberations.

*Id.* at 1428.

Ramsey is correct that the prosecutor said things better left unsaid; however, when these statements are viewed in context, *see Young*, 470 U.S. at 11, Ramsey's petition must fail. In most of the instances to which Ramsey objects, including the "race card" issue, trial counsel interposed timely objections. The trial court sustained most of them and gave curative instructions. "[J]uries are presumed to follow the court's instructions." *CSX Transp. v. Hensley*, 129 S.Ct. 2139, 2141 (2009) (internal citation omitted).

Notwithstanding the inappropriate comments by the prosecutor, viewed in the context of the curative instructions and the compelling evidence of guilt, the Appellate Division's decision to affirm Ramsey's conviction cannot be viewed as objectively unreasonable under AEDPA. *See* 28 U.S.C. § 2254.

## C.    Ramsey's Sentence

A claim that a sentence is unjustly harsh rarely presents a federal claim subject to review by a habeas court. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (where sentence is "within the limits set by the statute, its severity would not be grounds for relief . . . even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). Ramsey does not argue that he was sentenced outside the penalties authorized by New York's criminal laws for the crimes of which he was convicted. *See* Pet'r's Mem. of Law at 24-25. Instead, he argues that the length of his sentence, in comparison to the plea offers he rejected and the short two-year sentence given to his associate Long, demonstrate that he was "penalized" for going to trial. *Id.* at 24.

The imposition of a penalty upon an individual for choosing to exercise a constitutionally protected right is clearly improper. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "A show of lenience" to those who plead guilty "does not carry a corollary that the [sentencing judge] indulges a policy of penalizing those who elect to stand trial." *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.1976). The Supreme Court has clearly and unambiguously stated that prosecutors may offer a "proper degree of leniency in return for guilty pleas." *Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978). Having, perhaps unwisely, rejected two such offers, Ramsey cannot now claim a constitutional violation simply because the sentencing court was not as lenient as the prosecutor's pre-trial offers. "Equal protection does not free those who made a bad assessment of risks or a bad choice from the consequences of their decision." *Id.* at 226.

10

To vacate his sentence on the basis that it "penalized" him for going to trial, Ramsey has the burden to demonstrate that the sentence was "the product of actual vindictiveness on the part of the sentencing authority." *See Alabama v. Smith*, 490 U.S. 794, 799-800 (1989). Ramsey's petition offers no evidence whatsoever of vindictiveness. He rejected favorable pre-trial offers, against the advice of counsel, and chose the hazard of trial, cognizant of his exposure to stiffer penalties if convicted. *See* nn.1-2, *supra*. (discussing the two pre-trial offers). The Appellate Division did not act unreasonably in rejecting this claim as "without merit." *Ramsey*, 852 N.Y.S.2d at 305.

### III.

Ramsey's petition is denied. No certificate of appealability will be issued with respect to either of his claims since he has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253.

**SO ORDERED.**

s/FB

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 5, 2009